IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INNOCENT OBI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:10-cv-3154 |
| | ) |
| CHASE HOME FINANCE, LLC, JPMC | ) Judge Suzanne B. Conlon |
| SPECIALTY MORTGAGE LLC, | ) |
| SAFEGUARD PROPERTY, LLC, and | ) |
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF THE CHASE DEFENDANTS'
MOTION TO DISMISS WITH PREJUDICE PURSUANT TO 28 U.S.C. § 1915(e)(2)**

Plaintiff has consistently submitted contradictory and false information to this Court and others. It is impossible to reconcile the facts Plaintiff has set forth in his various sworn filings with each other and with reality. The Chase Defendants[1] bring this Motion to Dismiss based on the false and incomplete information provided in Plaintiff's *In Forma Pauperis* Application and Financial Affidavit ("IFP Application"; Dkt. No. 17). As demonstrated below, the information Plaintiff provided in the IFP Application is both intentionally incorrect and self-serving. Therefore, this Court should dismiss Plaintiff's action with prejudice.

Plaintiff claimed in his IFP Application that, since December 2009, he has supported himself and five children on $407 a month in unemployment income. Based on these representations, the Court granted his IFP Application. However, it has become clear from Plaintiff's public filings in the months before and after he submitted his IFP Application that he made multiple, intentional untrue statements regarding his alleged poverty. In other suits, Plaintiff claims ownership interests in various properties and has even submitted a mortgage account history showing that he made regular monthly

---

[1] Defendants Chase Home Finance LLC ("CHF"), JPMorgan Chase Bank, N.A. ("JPMCB"), and JPMC Specialty Mortgage LLC ("JPMCSM") are referred to collectively as the "Chase Defendants."

payments over $550 (and some over $1,000) during the time period in which he allegedly supported himself and five children on $407 a month. Because Plaintiff falsified information on his IFP Application, this Court *must* dismiss this lawsuit pursuant to 28 U.S.C. § 1915(e)(2)(A) ("[A] court *shall* dismiss [a case in which an IFP Application has been granted] *at any time* if the court determines that . . . the allegation of poverty is untrue.") (emphasis added).

In addition, the Court should dismiss this action pursuant to § 1915(e)(2)(B) because Plaintiff's Amended Complaint is malicious. Plaintiff claims in his Amended Complaint that he and his five children lived at 1407 E. 71st Place, Unit 2, in Chicago, Illinois ("Unit 2") on February 22, 2010 and that all four defendants removed certain personal property from Unit 2. However, in another lawsuit, Plaintiff claims that, since 2005, he has owed and resided at 1407 E. 71st Place, Unit 1, in Chicago, Illinois ("Unit 1"), and he claims in two other lawsuits to have resided at another property in early 2010. In addition, in yet another lawsuit, Plaintiff claims that, from December 2009 until June 2010, his former employer, American Airlines ("AA"), had possession of the same items Defendants allegedly removed from Unit 2 on February 22, 2010.

The Court should follow the overwhelming authority in this District and dismiss this action with prejudice. Furthermore, given Plaintiff's repeated abuse of the judicial process, the Court should award the Chase Defendants their fees and costs incurred in preparing and bringing this motion.

## FACTUAL BACKGROUND

**Plaintiff's Allegations.** On August 18, 2010, Plaintiff filed his Amended Complaint. ("AC"; Dkt. No. 55.) He alleges that, on February 22, 2010, he and his five children resided in Unit 2, which he claims is a rental property. (*Id.* paras. 2, 7.) Plaintiff alleges that, on February 22, 2010, the Chase Defendants and co-defendant Safeguard Property LLC ("Safeguard") entered Unit 2, changed the locks, winterized Unit 2, and removed some of Plaintiff's personal property from Unit 2. (*See id.* paras. 13, 20.) Specifically, Plaintiff claims the following personal property was taken:

> his Toshiba Lap Tap [sic] computer which contain[s] in the hard drive saved 2 unpublished books titled[] The reincarnation "Ogbanje" or "Abiku" and The viability of socialism in a pro-capitalistic state, the work of many years which value is in hundreds of thousands of Dollars and other personal effects, like gold rings, necklace, wrist watches, cash, camera, video recorder, files, memoirs, electric pen, cell phone[.]

(*Id.* para. 34; *see also id.* paras. 78-79.) Furthermore, Plaintiff alleges that, in February 2010, he sent letters to all four defendants alleging that defendants had taken his "Lap tap [sic] computer (Celeron) 2 un-published books in Hard Drive," "Pulse Smart pen 2 GB," and "Jewelry (Gold) Necklace & Ring." (*See* Ex. A to AC.). He also filed a report of stolen property with the Chicago Police Department in February alleging that the following property was stolen: "Designer Bag with Laptop" with an "Estimated Value: $1700," and "Rings/Bracelet/Watch" with an "Estimated Value: $10000." (Ex. D to AC.) In addition, Plaintiff claims that he and his five children were forced to live in "emergency rental property" for several days after February 22, 2010. (AC para. 30.)

**Plaintiff's IFP Application.** In his June 1, 2010 IFP Application, Plaintiff disclosed only two sources of income over the prior twelve months: (1) his employment with AA, for which he claimed he earned $1200 per month until December 4, 2009; and (2) $407 a month in unemployment compensation. (IFP Application at 1-2.) He also stated that he had $500 in checking and savings accounts. (*Id.*) Plaintiff also declared that his five children lived with him. (*Id.* at 3.) Notably, Plaintiff stated that he did not own any real estate and had not received more than $200 in income in the prior year from rentals, self-employment, or other sources of income. (*Id.* at 2-3.) He signed his IFP Application immediately below the statement "I declare under penalty of perjury that the above information is true and correct. I understand that 28 U.S.C. § 1915(e)(2)(A) states that the court shall dismiss this case at any time if the court determines that my allegation of poverty is untrue." (*Id.* at 4.)

**Real Estate Owned by Plaintiff.** On his IFP Application, Plaintiff declared, under penalty of perjury, that he did not own any real estate. (IFP Application at 3.) However, based on other lawsuits and publicly recorded documents, Plaintiff owns at least four properties.

3

In another federal lawsuit initially filed on September 10, 2010 against CHF, Plaintiff alleges that he "is the owner of the property mentioned herein as 1407 E. 71st Place Unit 1, Chicago, IL 60619, Loan #0695976365," that he "owns *his home* located at 1407 E. 71st Place Unit 1, Chicago, IL 60619," that he "bought the property in 2005," that the "monthly Mortgage payment is $556.33," and that he "has been making the payment as agreed on time since feb.2010 [sic] without being late for once." (Compl. paras. 4, 6, 9, 12-13, *Obi v. Chase Home Fin. LLC*, No. 10-cv-5747 (N.D. Ill. Oct. 27, 2010) ("*Chase II*") (emphasis added) (attached as Ex. 1).)[2] In a petition to perpetuate deposition testimony (which Plaintiff used to initiate the *Chase II* lawsuit), Plaintiff alleged the same facts and attached an affidavit in which he attested, under oath, that the contents of the petition were true. (Petition at 9, *Chase II* (Sep. 10, 2007) (attached as Ex. 2).)

In a lawsuit filed in Illinois state court on January 25, 2010, Plaintiff asserted ownership over yet another piece of property, alleging that in March 2007, Plaintiff was granted "ownership and possession [of the property] commonly known as 7432 S Phillips Ave., Chicago IL 60649," "[t]hat the said property is a residential and rental building," that "[u]pon the execution of the said Mortgage and note, Plaintiff became rightful owner of the said property commonly known as 7432 S Phillips Ave, Chicago IL 60649," and that "Plaintiff had right to possession of property commonly known as 7432 South Phillips Ave, Chicago IL. 60649 at all relevant times and right to quiet enjoyment of possession of said property by law of the state of Illinois." (Compl. paras. 6-9, *Obi v. Bank of Am.*, No. 2010 L 001020 (Ill. Cir. Ct. Jan. 25, 2010) ("*Bank of America*") (attached as Ex. 3).)

---

[2] The Court may take judicial notice of the admissions by Plaintiff in various other pleadings filed with other courts, and may consider these on a motion to dismiss without converting the same into a motion for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). In addition, the Court may judicially notice and consider on a motion to dismiss public documents filed by or with the Illinois Secretary of State. *See Lengerich v. Columbia College*, 633 F. Sup. 2d 599, 607 n.2 (N.D. Ill. 2009); *Redding v. Freeman Prods., Inc.*, No. 94 C 398, 1995 WL 410922, at *2 (N.D. Ill. July 10, 1995).

Plaintiff also filed lawsuits over the foreclosure of an unidentified property he claims to own. (*See* Compl. para. 29, *Obi v. U.S. Bank Nat'l Ass'n,*, No. 10-cv-5147 (N.D. Ill. Aug. 16, 2010) ("*U.S. Bank I*") (attached as Ex. 4); Compl. para. 4, *Obi v. U.S. Bank Nat'l Ass'n*, No. 10-cv-5428 (N.D. Ill. Aug. 27, 2010) ("*U.S. Bank II*") (attached as Ex. 5).) Because this unidentified property was allegedly foreclosed on by U.S. Bank and not Chase Home Finance or Bank of America (which Plaintiff asserts hold the mortgage notes on Unit 1 and the 7432 S. Phillips Ave. properties, respectively), the property is presumably a third parcel owned by Plaintiff.

Furthermore, on August 26, 2010, Plaintiff recorded with the Cook County Recorder's Office an Extinguishment of Easement relating to yet another property, located at 7200 S. Euclid Avenue, Chicago, IL 60649. (Ex. 6.) In the document, Plaintiff asserts that he is the "rightful owner" of that property and that he has owned the property since September 20, 2005. (*Id.*)

In addition, Plaintiff is apparently living at another location: 1133 E. 83rd Street, Unit 123, Chicago, IL 60619. Plaintiff disclosed this address in his April 19, 2010 Application and Affidavit To Sue As An Indigent Person that he filed under penalty of perjury in state court in this case before it was removed, and in a similar January 25, 2010 affidavit in the *Bank of America* case. (*See* Dkt. No. 1-2 at 2 ("State Court Application"; Ex. 7); App. and Aff. to Sue as Indigent Person, *Bank of America* (attached as Ex. 8).) It is not clear whether Plaintiff owns or rents this property.

**Other Income Earned by Plaintiff.** Plaintiff stated that his *only* income was $407 in unemployment compensation and that he had only $500 in checking and savings accounts. (IFP Application at 2.) In other litigation, Plaintiff declared under penalty of perjury that he received income over the last year from numerous sources that he failed to disclose to this Court. For instance, in his April 2010 pre-removal State Court Application in this case and in a similar January 2010 application in the *Bank of America* case, Plaintiff claimed to receive $600 per month from friends and family members (i.e., an "other" source of income). (*See* Exs. 7-8.)

5

In addition, and contrary to his IFP Application before this Court, Plaintiff has claimed in other matters that he has rental income. (*See* Compl. para. 46(d), *Obi v. Spinak*, No. 10-cv-5149 (N.D. Ill. Aug. 16, 2010) ("Plaintiff lost [sic] of rental income as a result of this disgraceful occurrences [sic]") (attached as Ex. 9); *see also* Compl. para. 36(5), *Bank of America* (Ex. 3) ("Plaintiff lost [sic] of rental income as a result of this disgraceful occurrences [sic] resulted in his roommate (tenant) move [sic] out in order not to be court [sic] in the act."). Given the number of forcible detainer complaints filed by Plaintiff over the years,[3] the fact that he apparently owns at least three properties in which he does not live, and his description of one of his properties as a "residential and rental building" (Compl. para. 7, *Bank of America* (Ex. 3)), Plaintiff appears to own rental units and receive rental income.

Finally, on August 27, 2010, in the *U.S. Bank II* case, Plaintiff declared under penalty of perjury, to earn $240 monthly from "self employment" attributable to "General Maintenance, grass cutting, general manual Labor," $500 monthly from Unemployment, $487.54 monthly from "other sources," which he describes as "garnishment," and a total monthly income of $1,235.54 (IFP App. paras. 4, 10, *U.S. Bank II* (attached as Ex. 10).) This is well above the $407 he disclosed to this Court. Incredibly, in that same filing, Plaintiff asserted that he paid monthly rent of $725, leaving him with a surplus of $510 per month for "feeding, etc." (*Id.* para. 10.)

However, in *Chase II*, Plaintiff alleges he entered into a trial loan modification agreement with CHF in February 2010, under which Plaintiff alleges he has been making monthly mortgage payments of $556.33 "as agreed on time since feb.2010 without being late once." (*Chase II* Compl. paras. 11-13 (Ex. 1).) He recently filed an opposition to a motion to dismiss in *Chase II*, to which he attached a

---

[3] *See, e.g., Obi v. Bostic*, No. 20081700734 (return date: Jan. 24, 2008), *Obi v. Stevens*, No. 20081714283 (return date: June 24, 2008), *Obi v. Grandberry*, No. 20081717632 (return date: July 25, 2008), all attached hereto as Exhibit 11. The property described in these actions includes 7200 S. Euclid, Unit 2, Chicago, IL 60649, 1407 E. 71st Place, Unit 2, Chicago, IL 60619 (the property at issue in this suit), and 1407 E. 71st Place, Unit 3, Chicago, IL 60619. In all of these actions, Plaintiff alleges that he is "entitled to the possession of" certain property and that the defendants unlawfully withheld possession of the property from the Plaintiff.

proposed amended complaint. (Plaintiff's Response to Defendant Chase Home Finance LLC's Motion to Dismiss Plaintiff's Complaint, *Chase II* (Dec. 6, 2010) (attached as Ex. 12).) He attaches to his proposed amended complaint an account history from his mortgage account with CHF. (*Id.* at Page ID # 230-234.) It shows that Plaintiff was regularly making payments of $556.33 and $1,059.79 during the time period in which he allegedly only made $407 a month in income. In fact, his account history shows that, between the time he was allegedly terminated from AA on December 4, 2009 and the time he filed his IFP Application in this case on June 1, 2010, he made payments totaling $4,350.27 – a time during which, according to his IFP Application, he would have made, at the most, only $2,442 for six months of unemployment income. Furthermore, on his IFP Application, he claimed that he had only $500 in checking and savings accounts. (IFP Application at 2.) However, the day after he filed his IFP Application, he made a mortgage payment of $556.33. (*See* Ex. 12 at Page ID # 230.) Therefore, if Plaintiff were to have $725 in monthly rent expenses, plus $510 in monthly personal care expenses, plus at least $556.33 in monthly mortgage payments on Unit 1, Plaintiff must have earned more than the $407 a month in unemployment compensation he claimed to have earned in this case (and more than the $1235.54 in monthly income he claimed to have earned in the *U.S. Bank II* case). Furthermore, he would have had to have had more than $500 in his checking and savings accounts at the time he filed his IFP Application in this case.

**Other Employment.** Plaintiff asserts in several lawsuits that he has had other jobs since December 2009. In a January 2010 motion filed with the Illinois Appellate Court, Plaintiff stated that he needed more time because he was "working a full time Job and preparing for the Brief, I have only nights and weekends to prepare the brief and as such, I need more time to research and read the Law . . . ." (*See* Motion for Extension of Time paras. 2-3, *Obi v. Thomas*, No. 1-09-1779 (Ill. App. Jan. 19, 2010) (attached as Ex. 13).) In addition, in his Amended Complaint in this case, Plaintiff claimed that, as a result of alleged actions by defendants on February 22, 2010, he "couldn't get to work the next day

7

and as a result of his homelessness, and not showing up at work . . . Plaintiff was fired from his second and only Job." (AC para. 29; *see also id.* para. 16 (alleging Plaintiff was at work on February 22, 2010 at 6:50 AM); *id.* para. 42 (alleging "Plaintiff was fired by his employer for failure to show up to work on Feb. 23rd 2010 till Feb. 25th 2010"); *id.* paras. 51, 68, 142 (alleging Plaintiff lost his job as a result of defendants' alleged acts). Plaintiff further asserted in separate communications in March 2010 to Safeguard Properties and CHF, "Your office has ruined my life by taking away what is precious to me and my business." (Ex. A to AC.) In his August 27, 2010 IFP Application in the *U.S. Bank II* case, Plaintiff claimed to earn income from self employment. (Ex. 10 para. 4.) Most recently, in his October 27, 2010 complaint in *Chase II*, Plaintiff alleged that his "[i]ncome then consists of salary from American Airlines *and other contractual Job.*" (Ex. 1 para. 4 (emphasis added).) However, Plaintiff did not list any of these other sources of income on his IFP Application.

**Contradictory Allegations.** In this lawsuit, Plaintiff claims the following items of personal property, among other things, were taken from Unit 2 on February 22, 2010: (1) a Toshiba laptop computer "which contain[s] in the hard drive saved 2 unpublished books titled[] The reincarnation 'Ogbanje' or 'Abiku' and The viability of socialism in a pro-capitalistic state, the work of many years which value is in hundreds of thousands of Dollars"; (2) a computer bag; (3) a gold ring and necklace; (4) wrist watches; (5) cash; (6) a camera; (7) a video recorder; (8) a cell phone; (9) memoirs; and (10) a "Pulse Smart pen 2 GB " (AC paras. 34, 78-79; Exs. A and D to AC). However, in his amended complaint in an employment discrimination suit against AA, Plaintiff alleges that, at the time he was terminated from AA in December 2009, he had stored the following personal property in his work locker: (1) a "Toshiba Laptop Computer" and "Intellectual property stored on laptop hard drive, including a Daily Memoir from 2000 to 2009; unpublished authored works 'Re-incarnation—Ogbanje Abiku' and 'The Viability of Socialism in Pro-Capitalistic States'"; (2) a computer bag; (3) a "Pulse Smart pen"; and (4) a "Gold Necklace and ring." (Amended Complaint paras. 62(a)-(d), (g), *Obi v.*

8

*Am. Airlines, et al.*, No. 10-cv-3613 (N.D. Ill. Aug. 20, 2010) ("*American Airlines*") (attached as Ex. 14).) Plaintiff alleges AA converted this property in December 2009, denied Plaintiff access to his locker (and the property within it) until June 2010, and discarded the property. (*Id.* paras. 49-55.)

Furthermore, Plaintiff repeatedly claims in his Amended Complaint in this case that he and his five children lived in Unit 2 on February 22, 2010 – the date of the alleged winterization of Unit 2 – and have lived there since 2008. (AC paras. 2, 7, 28, 31, 51.) However, at the same time, in *Chase II*, he describes Unit 1 as his "home" he has owned since 2005. (*See* Ex. 1 paras. 4, 6, 9.) Furthermore, in two Illinois state court IFP applications – filed under penalty of perjury in January 2010 and April 2010, respectively, in the *Bank of America* case and in this case before it was removed – Plaintiff swore that he resided at 1133 E. 83rd Street, Unit 123, Chicago, IL 60619. (*See* Exs. 7-8.)

Plaintiff has also inconsistently reported his unemployment compensation:

- On April 19, 2010, he stated he receives no unemployment compensation. (Ex. 7.)
- On June 1 and 14, 2010, he stated he receives $407 monthly in unemployment compensation. (*See* IFP Application at 1; IFP App. at 1, *American Airlines* (attached as Ex. 15).)
- On August 16, 2010, he stated he receives $250 per month in unemployment compensation. (IFP App. at 1, *U.S. Bank I* (attached as Ex. 16).)
- On August 27, 2010, he stated he receives $500 per month in unemployment compensation. (Ex. 10 at 2.)

In addition, his IFP Applications are inconsistent regarding the amount of monthly income he last earned while employed at AA. In his IFP Application in this case and in *American Airlines*, he claimed his last monthly salary at AA was $1,200 a month (IFP Application at 1; *see also* Ex. 15), while in *U.S. Bank II*, he states that his last monthly salary at AA was $2,600 per month. (Ex. 10 at 1.)

**Other Misrepresentations.** In his IFP Application, Plaintiff told this Court that his five children, including his daughter Maryclaret Ndubuisi Obi, live with him. (IFP Application at 3.) However, Ms. Ndubuisi Obi is listed as living at a California address on the June 16, 2010 Annual

Report of Ocean Breaker Investment, Inc., for which Plaintiff was listed as President until the June 2010 filing. (*See* 2010 and 2009 Annual Reports (attached as Exs. 17-18).)[4]

## ARGUMENT

I. **THE COURT SHOULD DISMISS PLAINTIFF'S LAWSUIT WITH PREJUDICE BECAUSE HE FILED A FALSE IFP APPLICATION.**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court *must* dismiss Plaintiff's lawsuit with prejudice because, as detailed above, his IFP Application contains false and incomplete statements regarding his financial status. Section 1915(e)(2) states, in pertinent part, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court *shall* dismiss the case *at any time* if the court determines that—(A) the allegation of poverty is untrue." (emphasis added). "Section 1915(e) of Title 28 mandates dismissal of the IFP proceeding if the court learns, at any time, that the IFP applicant's 'allegation of poverty is untrue.'" *Mathis v. Sw. Partners, Inc.*, Nos. 95 C 6073, 96 C 3075, 1998 WL 774827, at *1 (N.D. Ill. 1998).[5] Once the Court determines that an allegation of poverty is false, dismissal is mandatory. *See Thomas v. GMAC*, 288 F.3d 305, 306 (7th Cir. 2002) ("Because the allegation of poverty was false, the suit had to be dismissed; the judge had no choice.").

Plaintiff's false and incomplete statements on his IFP Application were made with an intent to deceive the Court, as evidenced by the fact that Plaintiff disclosed his ownership over property and his ability to make monthly mortgage payments to other courts – where disclosure was advantageous to him. Plaintiff understood his ownership rights in multiple properties because he has filed a series of lawsuits seeking to vindicate those rights. He was well aware of the amount of income he earned because he has alleged in *Chase II* that he has made monthly mortgage payments throughout this year

---

[4] Furthermore, the address listed for Ms. Ndubuisi Obi on the June 2010 Annual Report is 3152 Forest Lake Road, Pebble Beach, California, which corresponds to an expensive boarding school called the Stevenson School, where tuition for the 2010-2011 academic year is $46,600 for boarding students. Ms. Ndubuisi Obi is listed on the Stevenson School website as an Honor Roll student for the Fall 2009, Winter 2009, and Spring 2010 terms, and she has apparently been a student there since at least the 2008-2009 academic year. Print-outs of the web pages for the Stevenson School are attached as Exhibit 19.

[5] Unpublished cases are attached as Exhibit 21.

– payments far in excess of the $407 in monthly unemployment income he claimed to have made in his IFP Application. Plaintiff also clearly understood that he was required to disclose earnings from self-employment and other sources in his IFP Application to this Court, as he identified those sources in IFP applications filed with other federal courts.

At least one other court in this District has admonished Plaintiff for an incomplete IFP application. On August 18, 2010, in *U.S. Bank I*, Judge Manning denied Plaintiff's IFP application for his apparent failure to disclose income and assets:

> Mr. Obi indicates that he and his five children are subsisting on $250/month in unemployment benefits, and that his family do not have any other assets or sources of income. Mr. Obi's current in forma pauperis motion is denied without prejudice. He must submit, by 9/10/2010, an amended in forma pauperis motion containing a detailed explanation regarding the source of funds that enable a total of 6 people to obtain the basic necessities of life, including food and shelter.

(Order, *U.S. Bank I* (attached as Ex. 20).) Unsurprisingly, Plaintiff declined to provide a more detailed explanation regarding his sources of income and assets, and instead, he withdrew his IFP application. (*See U.S. Bank I*, No. 10 C 5147 (Dkt. No. 11).)

Furthermore, Plaintiff is not an uneducated, unsophisticated party who misunderstood the simple questions written in plain English. Rather, he claims to be a college graduate with a degree in philosophy from Urban University Rome Affiliate, and he further holds a Certificate in International Security from Kiel University Germany, a Diploma in Latin, and a Certificate in German Language. (*See, e.g.*, Plaintiff's Mem. in Opp. to Defendants' Motions to Dismiss at 20 (Dkt. No. 80).) "It is against this background that [Plaintiff's] testimony must be assessed." *Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 934 (N.D. Ill. 2007) (noting that plaintiff "is a sophisticated, knowledgeable and highly educated woman. She attended three years of college, majoring in mathematics, and she earned an associate's degree. She was two hours short of a degree."). Nor can Plaintiff claim that he was unfamiliar with the IFP Application, given that Plaintiff has initiated over twenty lawsuits, nearly

all of which were accompanied by some type of affidavit and request to proceed as an indigent person.[6] As Judge Nordberg observed in dismissing a case where a plaintiff provided false information on an IFP application, "[the plaintiff] . . . is not a typical *pro se* party. From 1992 to the present, he has filed 21 *pro se* employment discrimination cases in this Court. . . . The very frequency of [the plaintiff's] *pro se* filings would seem to belie his plea of ignorance." *Mathis*, 1998 WL 774827, at *2.

There are no plausible "innocent" explanations for Plaintiff's multiple untrue statements regarding his poverty on the IFP Application. His only possible motive was to deceive the Court in order to obtain the benefit of proceeding without filing fees and so as to receive appointed counsel. The hidden assets and sources of income here are extensive and are directly contradicted by Plaintiff's statements – under oath or penalty of perjury – in numerous other filings with other courts. In similar circumstances, courts in this District have repeatedly dismissed actions.[7]

Furthermore, the Court should dismiss this action with prejudice. While courts have discretion regarding whether a dismissal is with or without prejudice under § 1915(e)(2)(A), "the purpose of the IFP application is to encourage forthrightness and discourage fraud on the court." *Jeffrey*, 2007 WL 611277, at *3. Not only does lying on an IFP application constitute perjury and fraud on the court, but

---

[6] According to PACER, Plaintiff is listed as a party in seven federal lawsuits in the Northern District of Illinois. Plaintiff has also been a party to more than seventeen state court actions and has filed seven appeals with the Illinois Appellate Court. All of these actions (except for this case and the *American Airlines* case, in which Plaintiff has appointed counsel) have been litigated by Plaintiff *pro se*.

[7] *See, e.g., Mullins*, 511 F. Supp. 2d at 932, 943 (dismissing case where plaintiff failed to disclose property she owned or income she received); *Jeffrey v. Kraft Foods Global, Inc.*, No. 05 C 6458, 2007 WL 611277, at *3-5 (N.D. Ill. Feb. 22, 2007) (dismissing case where plaintiff falsely answered three questions on IFP application); *Bawaney v. TCF Bank*, No. 05 C 5390, 2006 WL 3523842, at *1-2 (N.D. Ill. Dec. 5, 2006) (dismissing case where plaintiff failed to disclose money in bank account); *Lukaneva v. Levy Restaurants at McCormick Place*, No. 05 C 6159, 2006 WL 1823169, at *4-11 (N.D. Ill. June 29, 2006) (dismissing case where plaintiff's IFP application failed to disclose assets plaintiff held in Russia and other income, and contained inaccurate information regarding money in bank accounts); *Mathis*, 1998 WL 774827, at *3 (dismissing case where plaintiff's IFP application was inconsistent with an IFP application in a different case); *Mathis v. N.Y. Life Ins. Co.*, No. 95 C 2770, 1996 WL 473430, at *1-2 (N.D. Ill. Aug. 16, 1996), *aff'd*, 133 F.3d 546 (7th Cir. 1997) (dismissed case for failing to disclose the ownership of a single piece of real estate); *see also Thomas*, 288 F.3d at 306-08 (affirming dismissal of case where plaintiff failed to disclose receipt of funds from defendant).

it is also an attempt to defraud the United States into financing litigation and legal representation. "Dismissal with prejudice may [be] the only feasible sanction for this perjury designed to defraud the government." *Thomas*, 288 F.3d at 306. By contrast, dismissing a case without prejudice where a plaintiff has committed perjury "would subvert the goals Congress sought to achieve in § 1915 and would encourage perjury . . . ." *Mullins*, 511 F. Supp. 2d at 940.

> A dismissal without prejudice would allow [the plaintiff] to refile her complaint. Her gamble with the false IFP affidavit would have paid off. She would be left in no worse position than if she had told the truth on the form. For plaintiffs like Ms. Mullins who intentionally defraud the government, the IFP application process would be a roll of the dice. If the subterfuge went undetected, the applicant would have a free lawyer. If it did not, there would be no sanction, for the case would simply continue. This sort of heads I win, tails you lose approach is unacceptable in all contexts.

*Id.* Consistent with these principles, courts in this District have overwhelmingly opted to dismiss (and the Seventh Circuit has affirmed) cases with prejudice where, as here, the plaintiff's statements are both untrue and clearly intended to deceive the court.[8] Accordingly, the Court should dismiss Plaintiff's case with prejudice.

## II.  THE COURT SHOULD DISMISS PLAINTIFF'S LAWSUIT BECAUSE IT IS MALICIOUS.

Section 1915(e)(2)(B) also provides that a court "shall" dismiss an *in forma pauperis* proceeding if the court determines that the action is "malicious." "[T]he test for maliciousness is a subjective one. . . . Lack of good faith or malice also can be inferred from a complaint containing material allegations of fact that plaintiff knows to be untrue or false statements made with intent to deceive the court." *Garland v. O'Grady*, No. 88 C 8281, 1988 WL 118879, at *2 (N.D. Ill. Nov. 3,

---

[8] *See, e.g., Thomas*, 288 F.3d at 308; *Mullins*, 511 F. Supp. 2d at 943; *Jeffery*, 2007 WL 611277, at *5; *Bawaney*, 2006 WL 3523842, at *2; *Lukaneva*, 2006 WL 1823169, at *11; *Sekendur v. Anoto AB*, No. 04 C 5029, 2004 WL 2554448, at *3 (N.D. Ill. Nov. 9, 2004), *aff'd*, 144 Fed. Appx. 553 (7th Cir. 2005); *Mathis*, 1998 WL 774827, at *3; *Mathis*, 1996 WL 473430, at *2, *aff'd*, 133 F.3d 546.

1988) (Conlon, J.). Malice can be inferred from a complaint that "plainly abuses the judicial process." *Horton v. Thomas*, No. 96 C 0397, 1996 WL 68013, at *2 (N.D. Ill. Feb. 14, 1996).

Here, Plaintiff has clearly made intentional, material allegations to the Court that he knows to be untrue. In the *American Airlines* case, he has asserted that AA converted Plaintiff's unique personal property – which was allegedly located in a locker at O'Hare – by holding the property between December 2009 and June 2010 (and discarding the property at some point in between). Yet in this case, Plaintiff alleges that the *exact same* property was converted during the February 22, 2010 winterization of Unit 2. Furthermore, Plaintiff alleges in this case that he and his five children (one of whom was at boarding school in California) resided in Unit 2 on February 22, 2010. However, according to the allegations in *Chase II*, Plaintiff has owned and lived in Unit 1 since 2005, and according to his pre-removal State Court Application in this case and in the *Bank of America* case, he claims to have lived at 1133 E. 83rd Street in January 2010 and April 2010.

Plaintiff's only conceivable purpose in making these contradictory allegations is to deceive the Court and to harass and vex the defendants. *See Holly v. Boudreau*, No. 03 C 8867, 2004 WL 609282, at *4 (N.D. Ill. Mar. 24, 2004) ("A malicious suit is one 'intended to harass.'"). Furthermore, the fact that Plaintiff uses different legal actions to advance contradictory and irreconcilable versions of the facts is a patent abuse of the judicial process, "tantamount to malicious prosecution and will not be tolerated by [the] court." *See Stewart v. Anderson*, No. 00 C 3056, 2000 WL 1741885, at* 2 (N.D. Ill. Nov. 24, 2000) (finding plaintiff's filing "paints a completely different picture of events from those he recounted in his complaint" and that his new allegations conflicted with statements in complaint). This Court and others in this District have consistently dismissed complaints where a plaintiff lies in submissions to the court. *See, e.g., Garland*, 1988 WL 118879, at *2; *Wynn v. Cooper*, No. 93 C

5028, 1994 WL 171423, at *2 (N.D. Ill. May 3, 1994).[9] Plaintiff should not be able to force the Chase Defendants to litigate claims that he knows to be false, and he should not be permitted to use this Court as a means by which to pursue this malicious, vexatious, and harassing litigation. This Court should dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### III.  THE CHASE DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES AND COSTS INCURRED IN CONNECTION WITH THIS MOTION.

The Chase Defendants should be awarded their attorney's fees and costs incurred in having to bring this motion to end this malicious litigation. Section 1915(f)(1) expressly provides for the award of costs against an unsuccessful IFP litigant. *See also Roche v. Adkins*, 998 F.2d 1016 (Table), 1993 WL 262009, at *1 (7th Cir. 1993) (noting that § 1915 permits the award of costs to a defendant and stating that "[t]he purpose of fee and costs awards under the statutes relied upon in the foregoing cases is twofold: to discourage frivolous litigation and unburden defendants of expenses they should never have had to bear"). Federal courts also have the inherent power to award fees and costs "to punish parties who abuse the judicial process. This includes the power to 'assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons' such as when a party has attempted to work a fraud upon the court, delay the proceedings, or delay or inhibit the enforcement of a court order." *Spartan Tool, LLC v. Edwards*, No. 07 C 5508, 2010 WL 582644, at *1 (N.D. Ill. Feb. 17, 2010) (internal citations omitted). Without an award of fees and costs, Plaintiff will be in no worse a position than he was before he rolled the dice in filing this malicious lawsuit. Requiring Plaintiff to pay the Chase Defendants' expenses will serve as a warning regarding the consequences of his malicious filings and hopefully will deter future abuses of the judicial system.

---

[9] Two of Plaintiff's complaints have already been dismissed *sua sponte* as frivolous. (*See U.S. Bank I* (order filed Sept. 20, 2010; Dkt. No. 12); *U.S. Bank II* (order filed Sept. 14, 2010; Dkt. No. 10).

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint in its entirety with prejudice and award the Chase Defendants their costs and fees incurred in connection with preparing and bringing this motion.

| | |
|---|---|
| Date: December 17, 2010 | **CHASE HOME FINANCE LLC, JPMC SPECIALTY MORTGAGE LLC, and JPMORGAN CHASE BANK, N.A.** |
| | By:   /s/ Andrew D. LeMar<br>      One of their attorneys |
| | Stephen R. Meinertzhagen<br>Andrew D. LeMar<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 North Wabash Avenue, 22nd Floor<br>Chicago, Illinois 60611-3607<br>Telephone: (312) 840-7000<br>Facsimile: (312) 840-7900 |

## CERTIFICATE OF SERVICE

On December 17, 2010, the undersigned caused the foregoing Memorandum in Support of the Chase Defendants' Motion to Dismiss With Prejudice Pursuant to 28 U.S.C. § 1915(e)(2) to be filed electronically with the Northern District of Illinois, and served upon the following counsel and parties via the Court's CM/ECF system:

| | |
|---|---|
| Ralph E. Meczyk | Peter J. Strauss |
| Meczyk Goldberg | Cunningham, Meyer & Vedrine, P.C. |
| 111 West Washington Street | 1 East Wacker Drive, Suite 2200 |
| Suite 1025 | Chicago, Illinois 60601 |
| Chicago, IL 60602 | Telephone: (312) 578-0049 |
| Telephone: (312) 332-2853 | Facsimile: (312) 578-0247 |

/s/ William Daitsman
William Daitsman